**In the Interest of R.R.K., K.A.O., and H.G.O., Minor Children,**

**J.L.O., Putative Father of K.A.O. and H.G.O., Appellant.**

No. 95–1094.

Court of Appeals of Iowa.

Dec. 22, 1995.

Patrick C. McCormick, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Diane Stahle, Special Assistant Attorney General, Judy Sheirbon, Assistant Attorney General, and Marleen Loftus, County Attorney, for appellee State.

Michael O'Brien of Juvenile Law Center, Sioux Center, for appellees minor children.

Considered by HAYDEN, P.J., and HABHAB and CADY, JJ.

HABHAB, Judge.

Jeffrey is the putative father of K.A.O., born May 22, 1989, and H.G.O., born April 1, 1991. He lived with their mother, Kandis, and their half-sister, R.R.K., beginning in 1986 or 1987.[1] Jeffrey did not wish to be listed as the father of K.A.O. and H.G.O. because he did not want to pay child support in the event he and Kandis separated.[2]

The children were adjudicated Children in Need of Assistance (CINA) in September 1992.[3] The children were placed with the maternal grandmother subject to the protective supervision of the Department of Human Services (DHS). The court's concerns at the time of the adjudication were five past founded child abuse reports concerning the children, Kandis's extensive history of alcohol abuse and relapses, the history of domestic violence between Kandis and Jeffrey, Jeffrey's resistive and belligerent attitude toward services, Jeffrey's denial his abrasive attitude and temper were contributing factors to the family dysfunction, and the significant past history of in and out-of-home placements for the children.

In March 1993, the children were allowed to return to the parental home following four months of sobriety by Kandis, cooperation with services, and a successful trial home visit. Custody of the children was transferred back to Kandis and Jeffrey after a modification hearing in May 1993.

Following multiple episodes of domestic violence and a relapse by Kandis into alcoholism, the children were removed and placed in foster care. Custody of the children was transferred back to DHS after a modification hearing in December 1993. Kandis's alcoholism grew steadily worse. She died on April 6, 1994.

All three girls suffer from the effects of fetal alcohol syndrome. All three were developmentally and socially delayed, and K.A.O. and H.G.O. had severe language deficiencies when they entered foster care.

A hearing on the State's petition for termination of Jeffrey's parental rights was held. The district court subsequently entered an order in May 1995 terminating his parental rights pursuant to Iowa Code sections 232.116(1)(c), (d), and (g) (1993).[4]

Jeffrey appeals.

■ **I.** *Scope of Review.* Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

1. Jeffrey and Kandis were never married because they believed a marriage would result in the loss of some social security and workers' compensation benefits.

2. Jeffrey had a child from a previous marriage and has had minimal contact with her over the last several years.

3. R.R.K. had been adjudicated CINA twice previously. K.A.O. had been adjudicated CINA once previously.

4. As Jeffrey was only the father of K.A.O. and H.G.O., his rights were only terminated in relation to these two children. Jeffrey had no biological or adoptive relationship with R.R.K.; thus, no termination of parental rights was necessary regarding her.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App. 1988) (citing *Dameron*, 306 N.W.2d at 745).

**II.** ***Statutory Criteria.*** Jeffrey contends the district court erred in terminating his parental rights under Iowa Code sections 232.116(1)(c), (e), and (g). While the district court relied on all three sections in terminating Jeffrey's rights, we only need to find grounds under one of the sections in order to affirm the ruling of the district court terminating parental rights.

■ Iowa Code section 232.116(1)(c) permits the district court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The only element in dispute under this section is the second element.

Peggy Frank, a social worker with the Crittenton Center, testified she provided both in-home therapy and in-home parenting skills for Jeffrey and Kandis. She stated Jeffrey did not make himself available for the majority of time. When Frank encouraged Jeffrey to become involved, Jeffrey stated he did not have any problems which needed to be addressed. After Kandis died, Frank continued to provide basic parenting skill services and supervised visitation. While Jeffrey made himself available for the visits, Frank found Jeffrey unreceptive to recommendations or advice. Frank stated Jeffrey has not shown consistency or follow-through in the areas he needed to work on as a parent. Jeffrey chose not to participate in a parent nurturing program he was encouraged to attend after Kandis died.

Jeffrey has continued to deny the domestic abuse within the home, notwithstanding his three prior arrests for domestic assault, a no-contact order, the police contacts, Kandis's statements, and R.R.K.'s recording of domestic violence she observed between Jeffrey and Kandis. Further, Jeffrey continues to maintain it is acceptable for him to drink and gamble until the time the children are returned to his home. His continued use of alcohol should be viewed in light of the facts (1) he has been convicted on three prior occasions of drunk driving; (2) he continued to drink at a time Kandis was attempting to overcome her drinking problems; and (3) he failed to consider the effects his alcohol usage would have on the children given the children's past traumatization as a result of Kandis's past alcohol abuse.

Jeffrey still has a difficult time disciplining the children. He has not internalized the nurturing materials provided to him. Frank testified Jeffrey appears to listen to recommendations and advice, but then he never follows through on the advice. Parenting skills learned one week were not used in successive weeks and had to be relearned. Frank stated Jeffrey has not made any independent effort to learn or inquire about learning sign language, nor does he make adequate efforts to work with the children in an attempt to better understand them. We find the requirements of section 232.116(1)(c) have been met. We affirm the district court's termination of Jeffrey's parental rights under this section.

While our decision regarding section 232.116(1)(c) is sufficient by itself to affirm the district court's ruling, we shall additionally discuss the court's ruling under Iowa Code sections 232.116(1)(e) and (g).

■ Iowa Code section 232.116(1)(e) permits the district court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code section 232.116(1)(g) permits the district court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The only element in dispute under both of these sections is the fourth element.

The fourth element "is met when the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance, Iowa Code section 232.2(6), exist." *In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). If any one of the grounds listed in section 232.2(6) can be proven by clear and convincing evidence, there is a sufficient basis for termination. *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990).

As was previously discussed, Jeffrey did not demonstrate the ability or the willingness to meet the special needs of his children. Jeffrey does not internalize or implement skills to work on improving the girls' speech. Mary Kohn, a DHS social worker, testified Jeffrey still denies he played a part in having the children removed from the home. She also stated Jeffrey still needs to address the fact these children have special needs and he has very limited parenting skills when it comes to the children. She stated Jeffrey needs to realize the children's problems do not stem from foster care, but rather from the effects of fetal alcohol syndrome and the environment in which they were raised prior to foster care. Kohn and Frank stated they did not believe Jeffrey could provide the structure and consistency the children would need. There have been occasions where the children have not wanted to visit Jeffrey, and there have also been occasions where the girls have been anxious to return to their foster home after their visits. We find the district court's ruling terminating parental rights under sections 232.116(1)(e) and (g) should be affirmed.

We agree with the district court's conclusions DHS should closely examine whether or not the relatives' commitment to providing the children with a permanent, safe, stable, consistent, and nurturing environment, free from any interference by Jeffrey, outweighs any loyalty or sympathy they may have for Jeffrey. We also agree that if it appears as though the relatives are unwilling or unable to do so, then a non-relative adoptive home should be sought.

Upon consideration of all arguments raised on appeal, we affirm the ruling of the district court.

**AFFIRMED.**