# IN THE COURT OF APPEALS OF IOWA

No. 14-0966
Filed September 17, 2014

IN THE INTEREST OF D.D.,
Minor Child,

T.W., Mother,
Appellant,

D.D., Father,
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Constance C. Cohen, Associate Juvenile Judge.

Parents appeal separately the termination of their parent rights. **AFFIRMED.**

Jamie Hunter of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant mother.

Amanda Demichelis of Demichelis Law Firm, P.C., Chariton, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Kevin J. Brownell, Assistant County Attorney, for appellee State.

Brent Pattison of the Drake Legal Clinic, Des Moines, attorney, and Brio Porter, law student, guardians ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

A mother and father separately appeal the termination of their parental rights to their child D.D., born in September 2012. We review their claims de novo. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

Our de novo review of the record reveals the following facts. The mother has a history of methamphetamine use. The child involved in this appeal came to the attention of the Iowa Department of Human Services in September 2013, after it was reported the mother had been using methamphetamine and was in jail for a probation violation. The father was incarcerated at that time, having violated the terms of his own probation imposed following his 2011 conviction for possession with the intent to deliver marijuana. The mother consented to removal of the child from her care, and the child was placed in the care of his paternal great-grandparents, where he has since remained.

Services were offered to the mother, including substance abuse and mental health treatment, but the mother continued using methamphetamine. At the time of the permanency hearing on March 4, 2014, the mother still had not participated in the intensive outpatient treatment program recommended after her October 2013 substance abuse evaluation. The court reported the mother saw the child twice in December 2013, twice in January 2014, and she had not availed herself of opportunities to interact with the child since. The court then directed the State to institute proceedings for termination of the parents' parental rights, and the State subsequently filed its petition on March 12, 2014.

On March 22, 2014, after accidentally using bath salts instead of methamphetamine, the mother overdosed. The mother started a thirty-day

inpatient substance abuse treatment program on March 24, and she has not used methamphetamine since. However, she did not begin participating in outpatient treatment until May 2014.

A hearing on the State's petition was held in May 2014. There, the mother testified she had been in treatment for twelve days, but she admitted she had used methamphetamine on and off for ten years. The mother testified she still had not completed a mental health evaluation, though she acknowledged she "most definitely" had some unresolved mental health issues. She explained she was "just not ready to address it yet."

The father also testified. He explained he began serving his prison sentence in June 2012, before the child was born, and his tentative discharge date is July 2015. He admitted that because of his incarceration, he had not been able to provide any type of care for the child. He also admitted he had only seen the child in person once, but he testified he tried to call once a week to stay in regular contact. He was hopeful he would be paroled in the near future, but he admitted nothing had been approved.

Following the hearing, the district court entered its order terminating both parents' parental rights pursuant to Iowa Code section 232.116(1) paragraphs (d) and (h) (2013), as well as finding paragraph (e) in the father's case. The mother and father now appeal, separately. Each parent contends (1) the State failed to prove the statutory grounds for termination; (2) termination was not in the child's best interests; and (3) the exceptions found in Iowa Code section 232.116(3) apply in this case and should preclude termination of their parental rights. *See A.M.*, 843 N.W.2d at 113.

In determining whether parental rights should be terminated under chapter 232, the juvenile court "follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *Id.* On our review, we need only find termination proper under one of those grounds to affirm. *Id.* at 707; *see also In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995). If the juvenile court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *D.W.*, 791 N.W.2d at 706-07. Even if the juvenile court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

Under Iowa Code section 232.116(1) paragraph (h), parental rights may be terminated if the court finds by clear and convincing evidence that (1) the child is three years of age or younger, (2) has been adjudicated a child in need of assistance (CINA), (3) has been removed from the physical custody of her parents for at least six months of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time.[1] Here, there is no question the first three

---

[1] We note that the father did not even challenge this ground on appeal, thus waiving error on the ground. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (stating "our review is confined to those propositions relied upon by the appellant for

elements were established: the child was born in 2012, was adjudicated a CINA in November 2013, and had been removed from the parents' physical custody since September 2013. The only debatable issue is the fourth element, and, upon our de novo review, we find the State has met its burden on this element as to both parents.

While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has stated that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing Iowa Code section 232.116(1)(e)). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.

At the time of the termination hearing, the father was incarcerated and not set to be discharged until 2015. Clearly the child could not be returned to his custody.

As to the mother, at the time of the termination hearing, she had only been in her substance-abuse-treatment program for twelve days. She had been battling with her addiction for at least ten years. While we hope the mother is dedicated to seeing substance abuse treatment through this time, her latest

---

reversal on appeal"); Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Nevertheless, because the State clearly met its burden in establishing the ground set forth in Iowa Code section 232.116(1)(h) as to the father, we briefly address that ground.

assurance that she is now interested in substance-abuse treatment is simply too little, too late for us to have any confidence in her commitment to sobriety at this time or for the foreseeable future. "A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 494. Moreover, she had not even begun to tackle her outstanding mental health issues. Because children are not equipped with pause buttons, "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Children simply cannot wait for responsible parenting." *In re C.H.*, 652 N.W.2d 144, 151 (Iowa 2002) (internal quotation marks and citations omitted). Under the circumstances presented, we find the State proved by clear and convincing evidence the child could not be safely returned to either parent's care at the time of the termination hearing. We therefore agree with the juvenile court that termination of each parent's parental rights was proper under Iowa Code section 232.116(1)(h).

Although each parent maintains termination of his or her parental rights is not in the child's best interests, we conclude the record clearly demonstrates otherwise. In making this determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Additionally, "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 113.

Here, the child has only met the father once, and the child is not likely to see him again until 2015. The mother has only begun to start working toward sobriety, let alone address her mental health issues. The child is doing well in the care of the paternal great-grandparents, where the child has been for almost a year, and all evidence suggests the child will continue to thrive in the great-grandparents' care. They are willing to adopt the child and assure that the child can maintain a safe relationship in the future with his biological parents, so long as they are appropriate. Taking into account the relevant factors, we conclude termination is in the child's best interests.

Finally, both parents assert subsections of Iowa Code section 232.116(3) apply to make termination of each parent's parental rights unnecessary. Because "[t]he factors weighing against termination in section 232.116(3) are permissive, not mandatory," "the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *A.M.*, 843 N.W.2d at 113.

The juvenile court found none of the exceptions to termination outweighed termination of the parents' parental rights being in the child's best interest, and we agree. Although it is clear that each parent loves the child, it is clear neither parent can care for the child given the mother's unalleviated substance abuse and mental health problems and the father's incarceration. Moreover, the child was well-integrated into the family of his paternal great-grandparents, and they were willing to adopt him. Permanency for this child can only be achieved by terminating each parent's parental rights. *See In re J.E.*, 723 N.W.2d 793, 802

(Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). We conclude the considerations under Iowa Code section 232.116(3) do not impede termination. Consequently, we affirm the order of the juvenile court terminating the mother and the father's parental rights.

**AFFIRMED.**