## IN THE COURT OF APPEALS OF IOWA

No. 14-1816
Filed January 14, 2015

**IN THE INTEREST OF E.R.,**
  **Minor Child,**

**A.K., Mother,**
  Appellant.

_____

Appeal from the Iowa District Court for Osceola County, David C. Larson, District Associate Judge.


A mother appeals an order terminating her parental rights. **AFFIRMED.**


Shawna N. Ditsworth, Spirit Lake, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Robert Hansen, County Attorney, for appellee State.

Shannon Sandy, Spirit Lake, attorney and guardian ad litem for minor child.


Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

April, the mother, appeals from a permanency order and the order terminating her parental rights to E.R. pursuant to Iowa Code section 232.116(1)(f) (2013). She contends that the State failed to prove the statutory ground for termination of her parental rights and that the bond between her and her child should preclude the termination of her parental rights.

I.

This family has been under the continuous supervision of the Iowa Department of Human Services ("IDHS") for more than five years. The family first came to the attention of IDHS in 2009 after it was discovered the father was operating a methamphetamine lab and growing marijuana in the basement of the family's home. E.R. was adjudicated a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) and (6)(n) (2009) based on the parents' failure to provide adequate care and the parents' untreated mental health and substance abuse issues. Although E.R. was adjudicated in need of assistance, E.R. remained in April's care with supportive services provided by IDHS until February 2011. On February 25, 2011, due to April's ongoing and untreated substance abuse issues, April and the father signed a voluntary placement agreement for E.R. to live with E.R.'s maternal aunt, Angela. April withdrew her consent approximately one week later, and E.R. was placed in foster care pursuant to an ex parte removal order. In March 2011, April was admitted to a residential substance abuse program in Sioux City, and E.R. joined her in the program. April had some success in the program and was able to provide structure and stability for E.R. The success was not lasting.

On May 14, 2013, April tested positive for marijuana. She then signed a voluntary placement agreement to have E.R. return to the foster home where E.R. had been residing prior to residing at the residential treatment facility. On May 31, 2013, April left the residential treatment program. Rather than follow the discharge recommendation of moving into a halfway house, April decided to return to her father's home. The State then filed a motion to modify the existing disposition order due to April testing positive for controlled substances. After a series of motions and hearings, custody of E.R. was transferred to IDHS for placement in foster care. E.R. was again placed with her maternal aunt, Angela.

The State thereafter filed a petition to terminate parental rights. During the pendency of the termination proceeding, Angela determined that E.R.'s special needs were greater than anticipated and that Angela would not be able to adopt E.R. or serve as her guardian. E.R. was returned to the same foster family where she had been residing prior to the transition to Angela's home. The State's petition to terminate parental rights was granted on October 17, 2014.

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480-81. While giving weight to the findings of the juvenile court, our statutory obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come

before.  We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination.  *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence.  *See id.*

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  First, the court must determine if a ground for termination under section 232.116(1) has been established.  *Id.*  Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child.  *Id.*  Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights.  *Id.*

III.

April contends the State did not prove grounds for terminating her parental rights pursuant to Iowa Code section 232.116(1)(f) (2013).  There is no dispute that the State has proved the first three elements for termination of parental rights pursuant to paragraph (f): E.R. is four years of age or older; E.R. had been adjudicated a child in need of assistance; and E.R. had been removed for the statutorily-required time period.  *See* Iowa Code § 232.116(1)(f)(1)-(3).  The only element at issue is whether E.R. could be returned to the care of April at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4) (requiring proof "that at the present time the child cannot be returned to the custody of the child's

parents as provided in section 232.102"). A child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by P.L.*, 778 N.W.2d at 39; *see also In re M.M.,* 483 N.W.2d 812, 814 (Iowa 1992). We conclude the State proved the challenged element for this ground supporting the termination of April's parental rights.

April has not demonstrated the ability to parent E.R. outside a supervised environment without exposing E.R. to ongoing harm. E.R. has significant, ongoing physical and mental health conditions that demand heightened parental attention. E.R. has been diagnosed with post traumatic stress disorder and attention deficit hyperactivity disorder. She receives speech therapy and physical and occupational therapy to address delays in gross motor and fine motor skills. When E.R. lacks structure or consistency, she regresses emotionally and behaviorally, as evidenced by severe tantrums and regression to age-inappropriate behaviors such as using a baby voice and being unable to dress herself. April is unable to provide the heightened supervision E.R. requires. April continually misses appointments for her and E.R. For example, April failed to take E.R. to required medical appointments to determine whether E.R. suffered from autism or Asperger's Syndrome. April has failed to follow case worker recommendations regarding the care of E.R.

April also has not demonstrated the ability to address and resolve her personal needs as a necessary predicate for creating the consistency and

stability E.R. requires. By way of example, April has not yet completed a required psychological evaluation necessary to address her mental health needs. She failed to attend her substance abuse sessions. April has not been able to maintain employment. She has had eleven job changes since this case was initiated. Her inability to maintain employment has led to financial and residential instability. She has also moved approximately eleven times since this case was initiated. Her inability to maintain employment also precludes her from meeting E.R.'s most basic needs.

IDHS made reasonable efforts toward reunification. IDHS has provided the following services: Family Safety, Risk, and Permanency; substance abuse treatment; mental health; foster care; relative care; visitation; counseling; therapy; family team meeting; and residential care services. April has failed to take full advantage of these services. We conclude there is clear and convincing evidence E.R. cannot safely be returned to April's home without being at risk for the same adjudicatory harms that led to her initial adjudication as a child in need of assistance. *See R.R.K.*, 544 N.W.2d at 277.

We also conclude termination of April's rights is in E.R.'s best interests. A child's need for safety and permanency are the "defining elements in a child's best interest." *See A.M.*, 843 N.W.2d at 113 (citation omitted). E.R. has been removed from the mother's care since May 2013. E.R.'s therapist testified E.R. needs permanency and has an ongoing need for services critical to her development, which April cannot reliably provide. While April argues the court should have allowed her more time to demonstrate an ability to meet E.R.'s needs, the record reflects that she has had five years to demonstrate her ability

to meet E.R.'s needs outside a supervised setting without being able to do so. As the IDHS caseworker testified, the same concerns that exist today with April existed when this case opened in 2009. E.R. cannot wait for April to become a responsible parent. *See In re C.B.*, 611 N.W. 2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."); *In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable.").

April next contends the court should not have terminated her parental rights because "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The statutory exceptions set forth in section 232.116(3) are permissive and not mandatory. "That is, it is within the sound discretion of the juvenile court, based upon the unique facts and circumstances of the case and the best interests of the child, to deny termination of the parent's rights even when the parent has proved an exception." *See In re C.A.*, No. 13-1987, 2014 WL 1234470, at *3 (Iowa Ct. App. Mar. 26, 2014). Here, there is some bond between the mother and child. However, the child's behavior has regressed since visitation with the mother resumed. The bond between the mother and the child should not preclude termination, where, as here, the child has waited more than five years for the mother to remedy the issues giving rise to adjudication.

IV.

For the foregoing reasons, the order of the juvenile court is affirmed.

**AFFIRMED.**