# IN THE COURT OF APPEALS OF IOWA

No. 15-0705
Filed July 9, 2015

**IN THE INTEREST OF J.R. and K.R.,**
    **Minor Children,**

**S.R., Father,**
    Appellant,

**S.R., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael Seymour, District Associate Judge.


A mother and father appeal separately from a juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**


Thomas Hurd of Glazebrook, Moe, Johnston & Hurd, L.L.P., Des Moines, for appellant-father.

Lynn Poschner of Borseth Law Office, Altoona, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Diane Stahle, Assistant Attorneys General, John P. Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee.

Karl Wolle of Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor children.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, J.**

The mother and father appeal separately from a juvenile court order terminating their parental rights to J.R. and K.R. They contend the evidence does not support termination; termination was not in the children's best interests; and they should have been given an additional six months, pursuant to Iowa Code section 232.104(2), to work toward reunification. We affirm on both appeals.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

There are six founded child abuse reports regarding this family naming either the father or the mother as the responsible person and dating back as early as 2009 when the older was two years old. In the present case, the juvenile court removed the children due to the father's domestic violence against the mother, the parents' physical abuse of the children, and the mother's substance abuse and mental health issues. The court entered a removal order in September 2013. The court adjudicated the children in need of assistance (CINA) in October 2013, pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2011). It placed the children in family foster care and ordered them to participate in therapy. The court also ordered the parents to participate in family safety, risk, and planning services; the mother to seek and follow mental health treatment recommendations; and the father to see a therapist specializing in domestic abuse issues. Visitation was at the discretion of the department of

human services (DHS). The parents had unsupervised visitations with some overnight visits.

In November 2013, the juvenile court found the mother had been hospitalized for a drug overdose and ordered the mother to obtain a substance abuse evaluation and follow through with recommended treatment. Both parents were to attend a parenting class. The father was to obtain anger management treatment.

In June 2014, the court found the parents were making process, and DHS was close to transitioning the children back to their home. The mother had obtained a substance abuse evaluation and successfully completed treatment, however, she tested positive for drugs less than two months later. She denied having a relapse, and had denied that the father ever physically abused her. The mother was seeing a psychiatrist and taking medication for anxiety and bi-polar disorder. The parents completed a parenting class focusing on non-physical disciplinary techniques. The children's therapist reported that the children informed her they were afraid of their parents and that the parents still hit them and yelled at them during unsupervised visitation. The court ordered the mother to continue providing drug tests, to attend domestic violence classes, and to see an individual therapist to address domestic violence issues. The court ordered the father to obtain an individual therapist to address domestic violence issues. Visitation continued to be at DHS's discretion, and the court ordered DHS to consider input from the children's therapist when offering visitation. DHS stopped overnight visitation and set up semi-supervised visitation.

Shortly afterward, in June 2014, the mother made an apparent suicide attempt. She told a police officer she took one hundred Klonopin and drank vodka before crashing her car. The parents both later denied that the mother attempted to commit suicide and said she had a seizure while driving. After the suicide attempt, the mother entered House of Mercy for substance abuse treatment, however, shortly thereafter she left to go back to living with the father. The parents obtained and attended some sessions of individual therapy during this time.

However, DHS and the children's therapist determined visits with the parents should cease until the mother had obtained a psychological evaluation and both parents worked with the children's therapist and their individual therapists on their accountability to the children. In the meantime, the parents each had phone calls with the children three nights per week; each call lasted five to ten minutes. The children's therapist asked the parents to write two accountability letters to the children, discuss it with their individual therapists, then discuss it with her and the children in an "accountability session." Neither parent fully complied with this request. Although the mother complied with the request for the first letter and accountability session, she refused to write the second letter and told the DHS worker it would not affect the outcome of the case. The father wrote the first letter but never asked his therapist to review it.

In October 2014, the court changed the permanency goal of the case to termination of parental rights and ordered the State to file a petition for

termination. The court held the termination hearing over four days.[1] DHS reported that the children had been out of the home since September 2013. They had recently been moved to a new foster home; DHS reported the new foster parents expressed interest in adopting the children.

The mother had been seeing a therapist for domestic violence issues. The mother's therapist reported the mother had made some progress in therapy but recommended she continue with individual therapy, complete a substance abuse program, and follow after care recommendations. The mother had tested positive for drugs on various occasions through the case. On at least one occasion, she admitted to using synthetic urine because she knew she would test positive. Between July and October 2014, she was required to provide random drug screens—she tested negative once and failed to appear for seven screens. She explained that she was on a number system[2] and, although the DHS worker had provided her a new number, she forgot to write it down and kept listening for her old number. The mother was not at that time in any substance abuse treatment program and was not seeking to enter a program, stating her insurance would not cover anymore treatment. The mother also testified at the termination

---

[1] The hearing occurred on October 22, 2014, October 24, October 27, and January 22, 2015. The vast majority of evidence was given on the first two dates. The court scheduled the two later dates and held the record open to give the parties time to communicate with various Native American tribal organizations due to an allegation at the October 27 hearing that the father had some Native American ancestry. This would have made the children subject to the Indian Child Welfare Act. At the January 22 hearing, the court was able to determine there was no Native American ancestry issue affecting this case.

[2] On a number system, each participant is assigned a confidential number and must call in to a central testing agency. If the number is called on a particular day, the participant must appear and give a urine sample.

hearing that the father had not physically abused her as she had previously reported.

The father testified at the termination hearing that he works twelve-hour days, five to six days per week. He stated he was unable to schedule appointments with a therapist to discuss his accountability letter given his work schedule, and he stopped seeing a therapist entirely in September 2014. He stated he felt, as the family's sole provider, that he could not risk losing his job to attend therapy. He stated that in the four weeks prior to the termination hearing, he called the therapist once a week to schedule an appointment, but the therapist did not call him back. He agreed he had not completed therapy to deal with his domestic violence and anger management issues.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (e), (f), and (k). It terminated the father's parental rights pursuant to section 232.116(1)(d), (e), and (f). The parents appeal separately but raise the same arguments.

## II. STANDARD OF REVIEW.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interest of the child. *Id.* at 776.

## III. ANALYSIS.

### A. Statutory Grounds for Termination.

The parents challenge each statutory ground upon which the court terminated their rights. The court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(d), (e), (f), and (k) and the father's rights pursuant to Iowa Code section 232.116(1)(d), (e), and (f). We will uphold termination of parental rights where there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.* We need only find termination proper under one ground to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Here, we focus on the evidence related to the court's termination of the parents' rights under Iowa Code section 232.116(1)(f).

To terminate parental rights under section 232.116(1)(f), the State must show by clear and convincing evidence the child is four years of age or older; has been adjudicated in need of assistance; has been removed from the physical custody of the parents for at least twelve of the last eighteen months, or the last twelve consecutive months; and there is clear and convincing evidence that at the time of the termination hearing the child could not be returned to the parents' custody as provided in section 232.102.

The parents argue the State failed to establish that the children could not be returned to them at the time of the termination hearing. The fourth element of

the termination ground set out in section 232.116(1)(f) is met when the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance exist. *In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995). If any one of the grounds listed in section 232.2(6) can be proved by clear and convincing evidence, there is sufficient basis to satisfy the fourth element of section 232.116(1)(f) for termination. *Id.*

The juvenile court adjudicated the children in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) meaning an unmarried child "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." The father has a long history of physically abusing the mother and the children. He testified he had completed a parenting class and was implementing the techniques he learned there. However, the children reported that he continued to hit them during visitation and that they were afraid of him. The father had not addressed his domestic violence or anger management issues in therapy. We find the evidence clear and convincing that he is imminently likely to continue physically abusing the children if they are returned to his care.

The mother also had a history of physically abusing the children. The court ordered her to address her mental health and substance abuse issues. She also completed the parenting class, however, she has not completed substance abuse treatment without relapsing or giving consistently negative drug tests. Her therapist also recommended, although she was making progress, she

needed to complete a substance abuse program and continue with therapy. The mother also continued to live with the father and deny that he physically abused her. These circumstances also demonstrate the mother is imminently likely to abuse or neglect the children again. Because of the parents' unresolved domestic violence, mental health, and substance abuse issues, the evidence is clear and convincing the children could not be returned to their care at the time of the termination hearing. Accordingly, the evidence supports termination under section 232.116(1)(f).

### B. Best Interest.

The parents contend it was not in the children's best interest to terminate their parental rights. They argue they had been improving their parenting skills and participating in services and were close to reunification in June 2014. They also complain the children had only recently been moved to a new foster home and the court should not have terminated their rights without having a strong adoption plan in place.

Under Iowa Code section 232.116(2), in considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *A.B.*, 815 N.W.2d at 778 (internal quotations and citations omitted). We may also consider

"whether the child has become integrated into the foster family" and "whether the foster family is able and willing to permanently integrate the child into the foster family." Iowa Code § 232.116(2).

The parents have been dealing with the same issues since the inception of this case and well before—these include domestic violence, physical abuse of the children, substance abuse, and mental health issues. Despite more than thirteen months of services and a brief period where the parents were making progress, the case has regressed because of the parents' failure to keep up their efforts. Because of their unresolved issues, the children are afraid of the parents and the parents have not completed the requirements to regain visitation so that they might have an opportunity to demonstrate their progress in parenting. The mother continues to struggle with her mental health and suicidal behavior and is not addressing the substance abuse issues that exist alongside. The father also has not addressed the core concerns in this case with respect to him. As a result, the parents are not able to meet the children's physical, mental, and emotional needs at this time. Placement with the parents, given the past harm the parents have inflicted and the unresolved issues, is not the best location for furthering their safety, long-term nurturing, and growth. Accordingly, termination is in their best interests.

### C.    Additional Time.

The parents further argue the juvenile court should have given them an additional six months to work toward reunification, pursuant to 232.104(2)(b), rather than changing the permanency goal to termination. In order to extend a

child's placement, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). Given the long history of this case and the family's long involvement with DHS; the parents' failure to address the issues requiring removal; and how recently the mother in particular has relapsed into drug use, been hospitalized, and denied the father's physical abuse of her, an additional six-month period of placement is unlikely to be enough time for the parents to cure the need for removal. We cannot make the necessary finding, therefore, giving the parents more time would not have been appropriate.

## IV.    CONCLUSION.

We find the evidence supports termination of the parents' rights pursuant to Iowa Code section 232.116(1)(f). We find termination is in the children's best interests, and an additional period of time for the parents to work toward reunification would not have cured the need for removal. Accordingly, we affirm the juvenile court's order.

**AFFIRMED ON BOTH APPEALS.**