# IN THE COURT OF APPEALS OF IOWA

No. 22-1605
Filed January 11, 2023

**IN THE INTEREST OF B.P. and S.G.,**
**Minor Children,**

**S.G., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for O'Brien County, Shawna L. Ditsworth, District Associate Judge.

A mother appeals the permanency order establishing a guardianship for her two children. **AFFIRMED.**

Tobias A. Cosgrove, Sibley, for appellant mother.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Tisha M. Halverson, Paullina, attorney and guardian ad litem for minor children.

Kevin Huyser of Rensink Pluim Vogel & Huyser, Orange City, attorney for minor children.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

In 2019, the now-named Iowa Department of Health and Human Services received what it concluded was founded allegations the mother, S.G., was using methamphetamine and marijuana while caring for B.P. and St.G.[1] Subsequently, various drug paraphernalia was found in the family home. The mother participated in voluntary services, but the issues crept up again in June of 2020; the department conducted assessments then and again that July before the children were adjudicated children in need of assistance (CINA) in August and the mother was ordered to receive a substance abuse evaluation, comply with the evaluation's recommendations, and submit to random drug testing.[2] In September, an additional founded child-abuse assessment was made after the mother's paramour pushed her down the stairs with the children in the home; the court granted a no-contact order against the paramour with the mother and children as protected parties. The children remained in the mother's care and custody until June 2021, when the court modified the CINA dispositional order because the mother was not meeting the older child's urgent medical needs, allowing his condition to worsen.[3]

But, at the beginning of 2022, the mother began testing positive for methamphetamine or was refusing tests, though she did have one negative screen

---

[1] B.P. and St.G were twelve and sixteen respectively at the August 2022 permanency hearing.

[2] The mother was later directed to also participate in mental-health services.

[3] In January 2021, the child was in the .01 percentile for age-appropriate weight and .08 percentile for age-appropriate height. The child proceeded to miss a number of appointments despite the potentially fatal nature of the condition. Continued medical care will be required for the child.

in May. She was in a relationship with someone with whom she has a history of substance abuse and domestic violence; he would occasionally be present during visits without the department's approval.[4] And as time went on, the mother struggled to comply with her court-ordered mental-health or substance-abuse treatment[5]—the caseworker testified at the permanency review hearing that the mother went to about half of her individual substance-abuse sessions and she was not consistently making her mental-health therapy appointments.

The mother did, however, typically comply with Family Centered Services directives. She also reliably participated in visits with the children. And, the record establishes a clearly demonstrated bond between the mother and the children, who have steadfastly stated they wish to return to their mother's care. In fact, the older child testified he planned to move back with his mother after turning eighteen.

A permanency hearing was held in August of 2022. The mother asked that the children be returned to her custody or that she be given another six months to make the necessary changes for reunification. Instead, the juvenile court placed the children in a permanent guardianship with their foster parents, who have stated

---

[4] This partner is not the same paramour the department was concerned about in September 2020.

[5] The mother received a substance abuse evaluation in August of 2021. She was diagnosed with severe methamphetamine and cannabis use disorder and mild alcohol use disorder. The recommended treatment was extended outpatient treatment for three to four months and then two to three months of continuing care; but, as of July 2022, she had not completed her outpatient care because of nonattendance and the timeframe was extended. She also received a mental-health evaluation in early 2022 and was diagnosed with post-traumatic stress disorder, generalized anxiety, major depressive disorder, other stimulant dependence, and cannabis abuse. Her mental-health care provider noted her major barrier to care was nonattendance.

they would support a relationship between the mother and the children. The mother appeals.

We review permanency orders de novo. *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). We give weight to the juvenile court's finding of facts but are not bound to them. *Id.* Iowa Code section 232.104(2)(d)(2) (Supp. 2022) allows the juvenile court to enter a permanency order establishing a guardianship; but, under section 232.104(4), the court can only do so if convincing evidence shows termination of parental rights "would not be in the children's best interests," the parent was offered services to fix the situation requiring removal, and the children cannot be returned home. "When the evidence shows the [children's] return will not produce harm, the [children are] to be reunited with the [custodial] parent." *In re D.M.*, 965 N.W.2d 475, 480 (Iowa 2021) (third alteration in original) (citation omitted).

The mother first argues the juvenile court should have returned custody of the children to her. But she concedes that she has unresolved addiction and mental-health concerns. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *cf. In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[W]e do not believe general statements about methamphetamine addiction are enough by themselves to prove that a child is imminently likely to suffer physical harm [in the form of a nonaccidental injury] . . . . [But] a juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care."). The mother had positive tests for

methamphetamine from samples collected in January and March of 2022. Since that time, she provided one negative drug screen and has otherwise refused to test, including in the weeks leading up to the permanency hearing. Courts may presume, as we do here, that missed tests would have been positive. *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases). Overall, the mother has consistently struggled with attendance in her substance-abuse and mental-health treatment, leaving unremedied the concerns that have been present throughout the children's CINA adjudication.[6] *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995) (noting children cannot be returned to their parents' home if adjudicatory harms still exist), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). On our de novo review, we affirm the juvenile court's determination the children could not be returned to the mother.

The mother next argues she should have been granted an additional six months to work toward reunification. *See* Iowa Code § 232.104(2)(b) (allowing a court, following a permanency hearing, to continue the children's placement for six months if the juvenile court can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). In this case, following years of services, the mother had not demonstrated an ability to maintain sobriety or meaningfully

---

[6] This is particularly troubling because of the mother's previous inability to get the older child to necessary medical appointments, which led to greater health concerns.

participate in treatment for her substance abuse or mental health. The record gives us no confidence that the adjudicatory harms would cease to exist by the end of six months.

The mother also makes an argument that placing the children in a guardianship will eventually separate the siblings because of the older child's plan to return to his mother's home following his eighteenth birthday. It is true that there is a declared a preference for keeping siblings together, but once the older child reaches adulthood, we could not compel where the older adult child might live under a juvenile court order in any event. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006); *see also In re J.J.,* No. 22-0046, 2022 WL 951030, at *3 n.12 (Iowa Ct. App. Mar. 30, 2022) (noting the relationship of the older child, on the verge of adulthood, with the younger siblings would no longer depend on preserving the mother's parental rights). And "this preference is not absolute"; we must still consider the best interests of both children. *J.E.*, 723 N.W.2d at 800; *see also In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) ("As in all juvenile proceedings, our fundamental concern is the best interests of the child."); *cf.* Iowa Code § 232.116(2) ("[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."). We find that the guardianship created by the juvenile court supports the best interests of the children.

Because the children could not be returned to their mother's care, there was no evidence that barriers to reunification would be dismantled within six months, and the guardianship was in the children's best interests, we affirm.

**AFFIRMED.**