# IN THE COURT OF APPEALS OF IOWA

No. 14-1311
Filed October 15, 2014

**IN THE INTEREST OF D.B.,**
      **Minor Child,**

**H.B., Mother,**
      **Appellant**.

_____

      Appeal from the Iowa District Court for Cerro Gordo County, Annette Boehlje, District Associate Judge.


      A mother appeals from the order terminating her parental rights to her son.
**AFFIRMED.**


      David Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant.

      Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Nichole Benes, Assistant County Attorney, for appellee.

      Mark Young, Mason City, attorney and guardian ad litem for minor child.


      Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Heather, the mother of D.B., appeals the order terminating her parental rights to D.B. She contends the statutory grounds for termination of her rights are not supported by substantial evidence and the court erred in not appointing counsel for D.B., who, she claims, opposed termination.

I.

In 2011 Heather voluntarily allowed D.B. to reside full-time with his maternal great-grandmother, Beverly. Heather allowed this because she and her fiancé were experiencing difficulties in their relationship, and she believed that D.B. should not be present for their arguments. Further, Heather suffered from mental health conditions, including anxiety, bipolar disorder, post-traumatic stress disorder, major depressive disorder, and borderline personality disorder, the combination of which rendered her fragile. For example, Heather reported her stress and anxiety put her on the verge of having seizures.

In the fall of 2012 D.B. began experiencing headaches and vision problems for which he was referred to Mayo Clinic. Upon his admission to Mayo Clinic, a non-cancerous tumor on his spine was discovered and removed. D.B. was diagnosed with malignant hypertension complicating chronic hypertension, myelitis, kidney problems, and visual impairment related to the hypertension. D.B.'s cluster of medical conditions requires extensive aftercare, including daily blood pressure monitoring, frequent medical appointments, and infusion treatment at Mayo Clinic. It was reported that D.B.'s condition "is very serious and it is of the utmost importance his medical care be followed through with

exactly as recommended." The failure to strictly follow D.B.'s aftercare requirements is potentially life-threatening.

While D.B. was at Mayo Clinic receiving medical treatment, Heather suffered a panic attack and returned home. Beverly remained with D.B. during this time. In contrast, even though D.B. was in the hospital for eleven days, Heather did not return to the hospital. Because she did not return to the hospital, Heather did not receive training to provide for D.B.'s now significant medical needs. Thus, upon D.B.'s release from the hospital, the department of human services sought D.B.'s removal from Heather's custody. The juvenile court entered an order for shelter care, placing D.B. in the temporary legal care, custody, and control of Beverly.

Following a hearing in January 2013, the court adjudicated D.B. a child in need of assistance pursuant to Iowa Code section 232.2(6)(e) (2013) ("in need of medical treatment . . . and whose parent . . . is unwilling or unable to provide such treatment") and (n) ("parent's . . . mental capacity or condition . . . results in the child not receiving adequate care"). At the hearing, Heather testified she had difficulty going to the doctor with D.B. because of her anxiety. The court continued D.B. in Beverly's custody, subject to Heather's visitation. The court ordered Heather "to continue to address her mental health issues and take any prescribed medication." While Heather took her medication, she refused counseling or other means of addressing her mental health needs.

Following a hearing in March 2013, the court entered a disposition order continuing D.B.'s custody with Beverly. The court ordered Heather to participate

in mental health counseling to address current stressors, to participate in visitation actively and on a consistent basis, and to make her home smoke free so as not to compromise D.B.'s asthma and other health concerns. Heather participated intermittently in visitation but continued to refuse counseling.

In February 2014 the court held a permanency hearing. D.B., then age twelve, was present. The court consulted "with the child in an age appropriate manner regarding the proposed permanency order and transition plan." The court found "[D.B.] [was] aware that his mother [was] unable to care for him at [that] time. He desire[d] that any transition to a new home proceed slowly." The court found D.B. had done well in Beverly's care, but noted D.B. potentially would need another caretaker in the future due to Beverly's age. Concerning Heather, the court found:

> Heather has attended some of [D.B's] appointments, but still has not addressed her own mental health issues. She has refused to attend counseling, even though it is very clear that she is struggling in her own life. She does not cooperate with FSRP services, which would help her with parenting and other life skills. Heather has repeatedly stated that [D.B] is coming home, despite her lack of follow through or effort to address the identified case plan goals.

The court continued permanency for three additional months to allow paternity testing on a man Heather identified as a potential father of D.B. The court also ordered the State to file a termination petition.

In the period between the February hearing and the July termination hearing, Heather exercised some after-school and weekend visitation with D.B. But, by May 2014, visitation dwindled to approximately once per month because Heather could not handle the stress of having D.B. on the same weekend

Heather's paramour had visitation with his son. Also, Heather frequently cancelled planned visitation due to claimed illnesses and/or scheduling conflicts. When Heather cut back weekend visitation, D.B. responded by declining after-school visitation.

Following a contested termination hearing in July 2014, the court terminated Heather's parental rights to D.B. pursuant to Iowa Code section 232.116(1)(e) (lack of significant and meaningful contact), (f) (child cannot be returned home safely), and (k) (parent has chronic mental illness and has been repeatedly institutionalized; child cannot return home within reasonable time). The court found:

> Heather was encouraged to visit [D.B.] and to treat her mental health problems, which include depression and anxiety. Heather has refused to go to counseling and may not be taking her medication as directed. Heather claims that counseling doesn't work for her. She has made appointments recently to see counselors but has missed them after they are scheduled.
> At times, Heather's mental health prevents her from leaving her home and she cannot go to a hospital. Heather has been more consistent lately with visiting [D.B.]. It still hinges on whether she "feels" like seeing him or not. Heather has canceled visits when [her paramour's] son is at her home due to her inability to handle two boys.
> Heather claims she can care for [D.B.], but has been unable to show consistency in her visits with him. She has no other supports in the community other than Bev[erly], [D.B.] and [her paramour]. She complains of pain and seizures.
> In sum, Heather is not able to mentally handle the care of an active boy who will require significant, consistent medical treatment for the rest of his life. She has not taken the opportunity to address these issues during the case, but has resisted getting help.
> . . . .
> [D.B.] and Heather are bonded and love each other. However, [D.B.] is more of Heather's caretaker than child. Heather has gone several months without contacting [D.B.].

> [D.B.] needs to be a child and to experience a childhood. Heather has refused to address her depression and anxiety, which is the barrier preventing reunification.

When considering the permissive exceptions to termination in section 232.116(3), the court noted D.B. "is over ten years of age and does not object to termination." *See* Iowa Code § 232.116(3)(b).

## II.

We review de novo proceedings terminating parental rights. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480-81. Our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See id.*

## III.

In determining whether parental rights should be terminated under chapter 232, the juvenile court "follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). First the court must "determine if a ground for termination under section 232.116(1) has been established." *Id.* If the court finds grounds for termination, the court then must decide if the grounds for termination should

result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *Id.* at 706-07. Even if the court finds "the statutory best-interest framework supports termination of parental rights," the court finally considers "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

Heather first contends none of the grounds for termination are supported by clear and convincing evidence. "[W]e need only find grounds to terminate under one of the sections cited by the juvenile court to affirm." *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We address termination of Heather's rights pursuant to section 232.116(1)(f). While there is no dispute concerning the first three elements of this ground for termination of rights, Heather challenges the finding that D.B. could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4) (requiring proof "that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102"). The record belies her challenge.

A child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010); *see also In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). D.B. has significant and ongoing medical conditions that require daily treatment and monitoring and frequent treatment with medical providers, including infusions at

Mayo Clinic. Heather's mental health conditions and other behaviors render her incapable of taking care of herself, let alone a child with life-threatening illnesses. When Heather and her paramour are not getting along, which seems to recur frequently, Heather cries, stays in the house, and does not allow D.B. or service providers to come. The evidence showed Heather attended only one of D.B.'s doctor appointments after his release from the hospital in late 2012. When challenged during her testimony at the termination hearing about not participating in visitation and not attending D.B.'s medical appointments, Heather denied any such problems and claimed others were lying. In sum, we conclude there is clear and convincing evidence D.B. cannot safely be returned to Heather's home without being at risk for the same adjudicatory harms that led to his initial adjudication as a child in need of assistance. *See R.R.K.*, 544 N.W.2d at 277.

Heather does not challenge the determination that termination of her rights is in D.B.'s best interest. Giving "primary consideration to [D.B]'s safety, to the best placement for furthering the long-term nurturing and growth of [D.B.], and to the physical, mental, and emotional condition and needs of [D.B.]," we independently conclude terminating Heather's parental rights is in D.B.'s best interest. *See P.L.*, 778 N.W.2d at 39. D.B. has a strong bond with Beverly, and she can and does provide for his needs.

We next consider whether any of the statutory exceptions set forth in section 232.116(3) should serve to preclude termination of Heather's parental rights. *See D.W.*, 791 N.W.2d at 707. Heather contends the court "erred in not appointing a separate attorney for [D.B.] in addition to a guardian ad litem"

because D.B. allegedly objected to the termination of the parent-child relationship but the guardian ad litem recommended termination of the parent-child relationship. *See* Iowa Code § 232.116(3)(b). When a guardian ad litem recommends a disposition that conflicts with a child's wishes, the juvenile court may, under section 232.89, appoint an independent attorney to represent the child in situations where a child is of sufficient age and maturity to make an informed decision about a potential termination of the child's relationship with his parents. *See In re A.T.*, 744 N.W.2d 664, 665 (Iowa Ct. App. 2007). The State argues error was not preserved. Heather asserts if error was not preserved on this issue, counsel was ineffective. In either case, the issue is without merit.

The order appointing the guardian ad litem also appointed him to serve as the child's attorney. The attorney's filings with the court were made as the child's attorney. Further, the only person who claims D.B. objected to the termination is Heather. As mentioned previously, D.B. attended the permanency hearing and the court made an age-appropriate inquiry into his wishes. The court found D.B. was aware Heather was unable to care for him and, because of the possibility he might not be able to stay with Beverly, he desired that any transition to a new home proceed slowly. At the termination hearing, the family care coordinator testified D.B. "usually just says things are fine, he's happy where he's at, he likes to see mom. He never reported to me that he wants to go home, those specific words." The court expressly found D.B. did not object to the termination of Heather's parental rights.

Based on our de novo review of the record, we conclude the court did not abuse its discretion in not appointing a separate attorney for D.B. There is no indication in the record there was any conflict here between the roles of attorney and guardian ad litem or that the recommendations conflicted with D.B.'s wishes.

IV.

Clear and convincing evidence supports termination under section 232.116(1)(f). Termination is in D.B.'s best interest. No exception in section 232.116(3) applies. There was no reason in this case to separate the roles of attorney and guardian ad litem. Accordingly, we affirm the termination of Heather's parental rights to D.B.

**AFFIRMED.**