**IN THE COURT OF APPEALS OF IOWA**

No. 15-0261
Filed April 8, 2015

**IN THE INTEREST OF M.L.,**
**Minor Child,**

**J.B., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Butler County, Peter B. Newell, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Amy K. Swanson of Lawler & Swanson, P.L.C., Parkersburg, for appellant mother.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Greg Lievens, County Attorney, and Martin Petersen, Assistant County Attorney, for appellee State.

Lana Luhring, Waverly, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

A mother appeals the termination of her parental rights to her child M.L., born in October 2012. We review her claims de novo. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

Our de novo review of the record reveals the following facts. The mother has a history of substance abuse and mental health issues, as well as involvement with the Iowa Department of Human Services (Department). The mother had an open child-in-need-of-assistance case concerning her two other children, not at issue here, at the time of M.L.'s birth. M.L. was thereafter adjudicated a child in need of assistance (CINA), and services to the mother continued. It appeared the mother was making progress in her CINA cases by early 2013; the Department noted the mother was in therapy at that time and that the mother recognized when she needed outside assistance due to her mental health issues. The CINA case was closed in April 2013. However, the mother's progress was short-lived.

In August 2013, while the child was in her care, the mother attempted suicide. Though the mother claimed she had been attacked, it was determined she had inflicted twenty lacerations to her neck, arms, ankle, lower right abdomen, and hip. Responding officers reported there was blood everywhere in the home, and they found a suicide note covered in blood in the trash can. The mother later admitted her wounds were self-inflicted, and she was charged with child endangerment. This was not the mother's first suicide attempt.

The child was subsequently removed from the mother's care and placed with the child's father, where the child has since remained. At the time of the

child's removal, the child was suffering from significant developmental delays and a flat head from being placed in her car seat for long periods of time.

The mother pled guilty to the child endangerment charge in October 2013 and was sentenced to two-years' imprisonment, which was suspended, and two-years' probation. The mother subsequently moved out of state to live with a relative, where the mother has since remained.

The mother initially reported she was engaging in services while out of state, including meeting with a psychiatrist and taking her prescribed medications. The mother reported in March 2014 she had completed a substance-abuse-treatment program and was beginning mental health counseling. The mother had phone contact with the child and in-person visits two days in May 2014. A home study was completed on the mother's out-of-state home, but the home study did not recommend placement of the child with the mother or the mother's relative.

Ultimately, the court in October 2014 directed the State to file a petition for the termination of the mother's parental rights, and a hearing on the filed petition was held in 2015. The mother testified and acknowledged that it was not in the child's best interests for the child to be placed in her care at that time, admitting she and the child would have to reestablish a relationship. Additionally, the mother admitted she had stopped taking her prescribed medications and was not participating in any form of counseling at that time. She requested an additional six months to work toward building a relationship with the child and reunification.

Following the hearing, the juvenile court entered its order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h)

(2013). The mother now appeals, contending the State failed to prove the statutory grounds for termination and that termination was not in the child's best interests. She also asserts the juvenile court should have allowed additional time to work toward reunification.

In determining whether parental rights should be terminated under chapter 232, the juvenile court "follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *Id.* On our review, we need only find termination proper under one of those grounds to affirm. *Id.* at 707; *see also In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995). If the juvenile court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *D.W.*, 791 N.W.2d at 706-07. Even if the juvenile court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

Under Iowa Code section 232.116(1)(h), parental rights may be terminated if the court finds by clear and convincing evidence that (1) the child is three years of age or younger, (2) has been adjudicated a CINA, (3) has been removed from the physical custody of her parents for at least six months of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parent at the present time. Here,

there is no question the first three elements were established: the child was born in 2012, was adjudicated a CINA in September 2013, and had been removed from the mother's physical custody since August 2013. The only debatable issue is the fourth element, and, upon our de novo review, we find the State has met its burden on this element.

Here, the mother admitted at the termination hearing the child could not be safely returned to her care at that time, satisfying the fourth element of subsection (h). Additionally, it is abundantly clear that the mother had not significantly addressed her mental health issues, as she was once again off of her medications and not in counseling at the time of the hearing. Under the circumstances presented, we find the State proved by clear and convincing evidence the child could not be safely returned to the mother's care at the time of the termination hearing. We therefore agree with the juvenile court that termination of the mother's parental rights was proper under Iowa Code section 232.116(1)(h).

Additionally, although the mother maintains termination of her parental rights is not in the child's best interests, we conclude the record clearly demonstrates otherwise. In making this determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Here, it is true that the child remains in the care of her biological father, but the record reveals the parents' relationship has not been a good relationship for either parent. Moreover, the mother's lack of insight of her extreme mental health issues—she

attempted suicide while this infant child was in her care—demonstrates her inability to put the needs of her child before her own. Taking into account the relevant factors, we agree with the juvenile court that termination of the mother's parental rights is in the child's best interests.

Additionally, the mother further asserts on appeal that the juvenile court "should have granted an extension of permanency to allow [her] time to return to Iowa so that she could demonstrate the changes she has made during the pendency of the court involvement." "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010); *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting the parent's past conduct is instructive in determining the parent's future behavior). Children are not equipped with pause buttons, and the "crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). At some point, as is the case here, the rights and needs of the child rises above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 299 (Iowa Ct. App. 2009). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has stated that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847,

850 (Iowa 1990) (discussing Iowa Code section 232.116(1)(e)).  The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.  We conclude a grant of an extension of time for the mother to work toward reunification is not warranted.

For these reasons, we affirm the order of the juvenile court terminating the mother's parental rights.

**AFFIRMED.**