**IN THE COURT OF APPEALS OF IOWA**

No. 16-1154
Filed August 31, 2016

**IN THE INTEREST OF R.P.,**
**Minor child,**

**W.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

Father appeals from an order terminating his parental rights. **AFFIRMED.**

Jeannette M. Keller of Bowman & DePree, L.L.C. West Liberty, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Elizabeth Araguas of Mears Law Office, Iowa City, guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**MCDONALD, Judge.**

The father appeals an order terminating his parental rights in his child R.P. The juvenile court terminated the father's rights in the child pursuant to Iowa Code section 232.116(1)(e) and (h) (2015). The standard of review and controlling framework are well-established and need not be repeated herein. *See In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016) (stating review is de novo and setting forth the applicable "three-step inquiry"); *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (same).

On de novo review, we conclude the State proved by clear and convincing evidence the ground authorizing the termination of his parental rights set forth in paragraph (e). As relevant here, the State was required to prove the father had "not maintained significant and meaningful contact with the child during the previous six consecutive months." Iowa Code § 232.116(1)(e)(3). In this case, the child was removed from the family in April 2015 for a variety of reasons. After removal, the father tested positive for methamphetamine. Since the time of removal, the father exercised few visitations with the child. The father had no contact with the child for a period of approximately eight to nine months starting in August of 2015. At that time, the father was to commence a jail sentence, but he failed to appear. He was arrested on forgery and theft charges in November of that year and pleaded guilty. He was incarcerated for the remainder of the case. The father did exercise three visitations with the child immediately prior to the termination hearing while the father was placed at the residential correctional facility. The father's few visitations with the child near the end of the case do not constitute significant and meaningful contact. *See, e.g.*, *In re L.A.*, No. 14-1312,

2014 WL 5478227, at *2 (Iowa Ct. App. Oct. 29, 2014) (affirming termination where the mother had minimal contact with the child and failed to remain in contact with the department of human services); *In re J.A.P.*, No. 03-2024, 2004 WL 360694, at *1 (Iowa Ct. App. Feb. 27, 2004) (affirming termination where incarcerated mother did not exercise visitation).

We also conclude the State proved by clear and convincing evidence the ground authorizing the termination of his parental rights set forth in paragraph (h). As relevant here, the State was required to prove the child could not be returned to the parent's custody "at the present time." Iowa Code § 232.116(1)(h)(4). A child cannot be returned to a parent's care if the child would remain in need of assistance or would be at risk of adjudicatory harm. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). On appeal, the father argues he was released from the residential facility several days after the termination order was filed. Setting aside the fact this information is not part of the record on appeal, the information is immaterial. "At the present time" means at the time of the termination hearing. *See A.M.*, 843 N.W.2d at 111. It is undisputed the father was placed at the residential correctional facility at the time of the termination hearing and was unable to have the child returned to his care at the time of the termination hearing.

On de novo review, we also conclude an additional six months' time for the father to work on his issues is not in the child's best interest. While the father states he now is willing to address his substance abuse problems and other issues, there is nothing to indicate he could resolve the problem and provide

constant and reliable care for the child outside a supervised setting. *See, e.g.*, *In re C.M.*, No. 14-1140, 2015 WL 408187, at *4–5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents sought more time but evidence established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights where the father had history of substance abuse); *In re J.L.*, No. 02-1968, 2003 WL 21544226, at *3 (Iowa Ct. App. July 10, 2003) (concluding that relapse of parent despite offer of services supported termination of parental rights). Indeed, the record reflects the father simply refused services when outside a supervised setting because he was too "messed up" or did not want to participate.

The father contends that termination of his parental rights is not in the best interests of the child. When we consider whether it is in the best interests of the child to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The father contends he can provide for the child. The evidence showed the contrary. The father admitted he had cared for the child by himself on only a handful of occasions prior to removal. Since the time of removal, the father has not been involved in the child's life in any meaningful way, absenting himself for approximately eight or nine months during the life of the case. When the father was offered parenting services, he declined to participate 9for no particular reason. The father has a demonstrated history of substance abuse and criminal behavior. The child is doing well in his current

placement. It was only immediately preceding the termination hearing did the father take an interest in the child. "A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *In re C.B.*, 611 N.W. 2d 489, 495 (Iowa 2000).

"The legislature has categorically determined 'the needs of a child are promoted by termination of parental rights' if the grounds for termination of parental rights exist." *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992) (citation omitted). At this tender age, it is in R.P.'s best interest that the father's rights be terminated so that the child can attain stability. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of the children to continue to keep them in temporary foster homes while the natural parents get their lives together." (citation omitted)); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)); *In re M.M.S.*, 502 N.W.2d 4, 7 (Iowa 1993) (rejecting father's claim that he had only limited opportunities to bond with child because of his incarceration and stating, "[i]n the first place it is he who is most responsible for his limited opportunities"); *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable.").

Finally, we consider whether the exceptions in section 232.116(3) apply to this case and should serve to preclude the termination of the father's parental rights. The "exceptions" to termination are permissive and not mandatory. *See*

*A.M.*, 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes" the father's inability to provide for the child's developing needs. *See D.W.*, 791 N.W.2d at 709. The record does not demonstrate a close parent-child relationship that should serve to preclude termination of the father's rights. The father has been largely absent from the child's life. When the father has had the opportunity to avail himself of services to allow him to better care for the child, he failed to do so. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112. While the father now claims to be ready to address these long-standing issues, "[w]hat's past is prologue." *In re K.F.*, No. 14-0892, 2014 WL 4635463, at \*4 (Iowa Ct. App. Sept. 17, 2014); *see also A.B.*, 815 N.W.2d at 778 (noting a parent's past conduct is instructive in determining future behavior).

**AFFIRMED.**