**IN THE COURT OF APPEALS OF IOWA**

No. 17-0242
Filed May 17, 2017

**IN THE INTEREST OF B.W., M.W., and G.O.,**
**Minor Children,**

**A.W., Mother,**
　　Appellant,

**I.W., Father of B.W. and M.W.,**
　　Appellant,

**J.O., Father of G.O.,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

　　Parents appeal from the order terminating their parental rights. **AFFIRMED ON ALL APPEALS.**

　　Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant mother.

　　Linda A. Hall of Linda Hall Law Firm & Mediation Services, P.L.L.C., Cedar Falls, for appellant father I.W.

　　Joseph G. Martin of Swisher & Cohrt, PLC, Waterloo, for appellant father J.O.

　　Thomas J. Miller, Attorney General, and David M. Van Compernolle, Assistant Attorney General, for appellee State.

Michael J. Lanigan of Law Office of Michael Lanigan, Waterloo, guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

The parents of three children appeal from the order terminating their respective parental rights. Joshua, father of G.O. (born 2008), contends the State failed to prove the statutory grounds authorizing termination of his parental rights. Ira, father of B.W. (born 2005) and M.W. (born 2007), contends the State failed to prove the statutory grounds authorizing termination of his parental rights. He also argues the State failed to make reasonable efforts to reunify the family, termination of his rights is not in the children's best interests, and he should be given another six months to work toward reunification. April, mother to all three children, contends the State failed to prove the statutory grounds authorizing termination of her parental rights. She also argues termination of her parental rights is not in the children's best interests.

I.

There are three children at issue. April and Ira are the parents of B.W. and M.W. April and Ira divorced in 2007. The decree dissolving their marriage afforded Ira regular visitation with the children, but Ira has not regularly exercised the visitation. Indeed, as will be discussed below, he has been largely absent from the children's lives. April and Joshua have been in a long-term relationship beginning some time before 2008, when G.O. was born. April and Joshua currently reside together.

The Iowa Department of Human Services (IDHS) has been involved with the family[1]—April, Joshua, and the three children—since 2007. Between 2007

---

[1] For purposes of discussion, "the family" is the unit indicated, and "the parents" are April and Joshua.

and the time of the termination hearing in late 2016, IDHS conducted fifteen separate investigations involving this family. One investigation resulted in a confirmed report of abuse, and six investigations resulted in founded reports. The primary concerns noted in the reports and assessments were the unsanitary condition of the family home, multiple instances of physical abuse of B.W., and April's failure to supervise the children. The three children were adjudicated children in need of assistance in October 2012, pursuant to Iowa Code section 232.2(6)(b) (addressing physical abuse of a child by a guardian) and (c)(2) (addressing the failure of a child's guardian to "exercise a reasonable degree of care in supervising the child") (2011).

The children were removed from the home for the first time in April 2013. At that time, the parents were instructed the home would have to be cleaned and made safe before the children could be returned to their care. M.W. and G.O., but not B.W., were returned to the parents' care. However, the condition of the home began deteriorating almost immediately upon the children's return. The two children were removed from the parents' care in September 2015 due to methamphetamine use in the home. They have been placed in separate foster homes. IDHS required the parents to maintain an adequately clean home for three consecutive weeks before allowing the parents to have visitation with the children at home. The parents have been unable to comply with this requirement.

IDHS has also required the parents to submit to drug testing since the removal. April and Joshua admitted to methamphetamine use beginning in 2014. April states her last use of methamphetamine was in January 2016. She

completed four drug tests between May 2016 and September 2016, all of which were negative for non-prescribed substances. Joshua also states his last use was in January 2016. However, he tested positive for methamphetamine in February 2016. Joshua completed twelve drug tests between May 2016 and September 2016, all of which were negative for any illegal substances.

The parents have not wanted for services during their seven-year-plus involvement with IDHS. The services offered to the family include: Family Safety, Risk, and Permanency services; Behavioral Health Intervention Services; mental-health counseling and medication management for April, B.W., and M.W.; play therapy for all three children; Area Education Agency services; Head Start; family counseling; parenting education; adult services and habilitation services for April; inpatient psychiatric services and Psychiatric Medical Institutes for Children (PMIC) placements for B.W.; psychological assessments, including IQ testing, for April, Joshua, and B.W.; substance abuse evaluations and treatment for April and Joshua; random drug testing; protective day care; family foster care and visitation; transportation and referrals to community resources; family team meetings; and ongoing case management services.

IDHS believes the parents have not progressed sufficiently to allow the children to be returned to their care. IDHS also states there is a noticeable difference in the parents' motivation between the first removal and the second removal, and the parents are not implementing the lessons the service providers are imparting. On the other hand, both April's therapist and counselor testified she was progressing well and had made changes in her life indicative of the ability to care for the children.

Each of the children has mental-health conditions requiring greater than ordinary parental supervision and care. B.W.'s are most severe. At the time of the termination hearing, B.W. was placed in a PMIC placement in Kansas. Testimony during the termination hearing established B.W. is unlikely to be adoptable because of his mental-health conditions. G.O. has been diagnosed with a disruptive disorder. An IDHS worker testified G.O. had been angry about the uncertainty of his placement. M.W. has attention-deficit/hyperactivity disorder, but a worker reported M.W. was doing well in school while in the care of his foster family.

Ira was uninvolved in the children's lives from the time of IRA and April's divorce until after their second removal in 2015. Ira has diagnoses of agoraphobia and panic disorder. He self-medicates with marijuana. In September 2015, he said he was using marijuana "most days." In July 2016, he said he was using it "occasionally." Ira has exercised limited visitation with B.W. and M.W. beginning in the spring of 2016. He has not complied with all of IDHS's requirements to exercise more visitation with the children. He contends some of his non-compliance should be excused because the relevant agencies failed to return his calls and because it was difficult to find a therapist in his community.

## II.

Our review is de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework and burden of proof are both well established and need not be repeated herein. *See id.*; *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016).

III.

All three parents challenge the grounds for termination of their respective parental rights. April's and Joshua's parental rights were terminated pursuant to Iowa Code section 232.116(1)(d) and (f) (2016). Ira's rights were terminated pursuant to section 232.116(1)(f). Where multiple grounds for termination are alleged, we may authorize the termination of parental rights if we find any single ground has been satisfied. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

We examine section 232.116(1)(f). The State is required to prove the following:

> The court finds that all of the following have occurred:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). A child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or would remain a child in need of assistance. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992); *see also In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct.App.1995). Only the last element is in dispute.

We first address April and Joshua's challenge to the sufficiency of the evidence. April and Joshua contend the evidence showed they were improving

their ability to parent and the children could have been returned to their custody at the time of the termination hearing. There was testimony the condition of their home was improving. By the time of the termination hearing, the major concern regarding the condition of the home was cleanliness rather than safety. April and Joshua provided clean drug tests for several months leading up to the termination hearing. April's therapist and counselor felt she had the ability to make positive changes in her parenting.

Despite some evidence showing the parents had recently progressed, we nonetheless conclude there is clear and convincing evidence the children could not be returned to the parents' custody at the time of the termination hearing. The parents never progressed to visits at their home, because they were unable to comply with IDHS's requests regarding the cleanliness of their home. Without such progress, it is clear the children cannot be returned to their home now. *See, e.g., In re N.C.*, No. 17-0120, 2017 WL 1088111, at *1 (Iowa Ct. App. Mar. 22, 2017). More important, IDHS has been involved with this family for almost a decade. Throughout the life of the case, the parents have improved over a short period of time only to regress into unsafe living conditions and habits. What's past is prologue. *See In re R.M.*, No. 09-1429, 2009 WL 4114727, at *5 (Iowa Ct. App. Nov. 25, 2009) (discussing parent's inability to show prolonged improvement); *In re K.J.W.*, No. 08-1827, 2009 WL 141174, at *2–3 (Iowa Ct. App. Jan. 22, 2009) (same); *In re E.H.*, No. 08-1730, 2009 WL 139515, at *4 (Iowa Ct. App. Jan. 22, 2009) (same); *In re A.R.R.*, No. 06-1807, 2007 WL 108444, at *2 (Iowa Ct. App. Jan. 18, 2007) (same).

We next address Ira's challenge. Ira argues the termination of his rights was improper under this ground because the State failed to make reasonable efforts to reunite him with his children. The State must make reasonable efforts to reunify the family as quickly as possible after a child has been removed from his or her parents' care and custody. *See* Iowa Code § 232.102(7). "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102(10)(a)(1).

We conclude the reasonable-efforts mandate has been satisfied under the circumstances. IDHS's responsibility to make reasonable efforts to reunite the family does not absolve a parent of his or her responsibility to make efforts as well. *See In re M.L.*, No. 09-1348, 2009 WL 3775249, at *4 (Iowa Ct. App. Nov. 12, 2009); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). It is unclear what efforts, if any, Ira made to make himself an acceptable custodian for the children. He has physical and mental limitations that affect his ability to parent. He lacks the financial resources to care for the children. He has not shown any interest in the children when he was able to have visitation. This is consistent with his history, in which he was absent from the children's lives for seven years prior to IDHS involvement. An IDHS worker testified during one visit Ira became distracted by pictures of rocks on his phone and ignored B.W. to focus on the rocks. IDHS's efforts must be reasonable; they need not be superhuman. "A

parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. That is precisely what Ira has done.

For the foregoing reasons, we conclude the State proved by clear and convincing evidence at least one statutory ground authorizing the termination of each of these parent's respective rights.

IV.

We next address whether termination is in the best interests of the children. *See* Iowa Code § 232.116(2). April and Ira argue B.W.'s mental-health conditions require special care only his biological family can provide. Relatedly, they argue that termination of their parental rights will reduce B.W.'s chances for success in adulthood. The parents also argue, more generally, that termination of their parental rights with respect to the other children is not in the children's best interests.

We disagree; termination of the parents' respective rights is in the best interests of the children. We already have concluded the children cannot be returned to the custody of the parents. Once a ground for termination has been established, it is necessary to move expeditiously to enable these children to find permanency. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *Id.* at 778. Neither April nor Ira has been able to demonstrate long-term stability. Both now express a degree of

concern for B.W.'s future that comes too little, too late—Ira's statement that termination would "sever B.W.'s connection with the only supports he has ever known" glosses over his own absenteeism from B.W.'s life.

We also have a demonstrated record in this case on which to rely. The children were once before returned to April's care. "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *Id.* (citation omitted). When the children were returned to April's home in 2013, the condition of the home quickly deteriorated and the parents began using methamphetamine. The children were later removed. That does not give us hope for a subsequent return when multiple service providers testified the parents displayed less motivation to seek the return of their children than they had during the first removal.

V.

Finally, Ira argues he should be given another six months to work toward reunification. We may grant this request if we are able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Ira uses this avenue to reiterate his argument regarding the State's failure to make reasonable efforts to reunite the family. He argues if reasonable efforts had been made toward reunification by IDHS, he would be closer to reunification. He also cites *In re K.L.P.*, No. 15-1371, 2015 WL 6507840, at *4–6 (Iowa Ct. App. Oct. 28, 2015), arguing his situation is analogous to the father's in that case. We have

already dismissed this argument in its first iteration. In its second, it fares no better. The father in *K.L.P.*, Bradley, is not analogous to Ira. Bradley was incarcerated at the time of K.L.P.'s birth, and IDHS made no reasonable efforts, refusing to provide visitation to him while he remained incarcerated despite knowing Bradley would be released prior to the case being closed. *See K.L.P.*, 2015 WL 6507840, at *4. Nonetheless, Bradley "availed himself of classes to address issues resulting in his incarceration and issues regarding his parenting." *Id.* at *6. Ira has not shown similar efforts to address the issues preventing reunification with his children. Ira's history demonstrates he has no interest in parenting his children. We therefore decline to grant a six-month extension.

VI.

We affirm the judgment of the district court.

**AFFIRMED ON ALL APPEALS.**