**IN THE COURT OF APPEALS OF IOWA**

No. 19-0883
Filed July 24, 2019

**IN THE INTEREST OF R.F., I.F., and A.F.**
**Minor Children,**

**S.F., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Black Hawk County, David F. Staudt,

Judge.

    A mother appeals the termination of her parental rights. **AFFIRMED.**

    Christina M. Shriver, Waterloo, for appellant.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

    Melissa A. Anderson-Seeber of Juvenile Public Defender's Office,

Waterloo, attorney and guardian ad litem for minor children.

    Considered by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights to her three minor children, R.F., born in 2016; I.F., born in 2017; and A.F., born in 2018.[1] The mother argues the State did not make reasonable efforts at reunification and challenges the sufficiency of the evidence underlying the statutory grounds for termination cited by the juvenile court.

**I.      Background Facts and Proceedings**

In August 2017, I.F. presented to the emergency room with a broken shoulder bone that was sustained while she was being supervised by the father; the mother was at work at the time.  In September, the parents presented to the emergency room with both R.F. and I.F. relative to scabies and scalp lesions.  At the time, I.F. was also experiencing issues with her leg.  It was determined I.F. had a broken femur, which occurred weeks earlier.  The parents were unable to explain the injuries.  A doctor determined the injuries were likely related to abuse.  The father acknowledged caring for the children while intoxicated and ultimately admitted to inflicting the injuries to I.F.  The parents agreed to a safety plan that called for placement of the children with the paternal grandmother, prohibited unsupervised contact between the parents and children pending a child-abuse investigation, and required the parents to cooperate with the Iowa Department of Human Services (DHS).  The State filed child-in-need-of-assistance (CINA) petitions as to both children.  The father was arrested on a charge of child endangerment resulting in serious injury and a no-contact order was entered

---

[1] The parental rights of the children's father were also terminated.  He does not appeal.

between the father and I.F. The children were adjudicated CINA in October and formally removed from the parents' care. The court ordered that the father have no contact with the children. The primary concerns in this case were the father's alcohol abuse and mental-health and anger issues and the mother's inability to detach herself and the children from the father.

The father was eventually released from jail. By December, the mother had participated in a psychological evaluation and began attending individual therapy. However, concerns were still looming that the mother would allow the father around the children, as the parents continued to have frequent contact with one another. Over the course of the next several months, the mother made significant strides in several areas and progressed to unsupervised visitation with the children, including overnights. Yet, she continued to indicate her intention of remaining in a relationship with the father, whose lack of engagement in services was concerning, and an inability to recognize the danger the father posed to the children.

In July 2018, the court granted DHS's request for deferral of permanency for an additional six months to allow the father to engage in services and the mother to better understand the risks the father poses to the children. However, in August, the parents and children were found together in a car during one of the mother's unsupervised overnight visits. Both parents were arrested. The mother's visitation reverted to fully supervised. A.F. was born to the parents in September.

A.F. was immediately removed from the parents' care.[2] A.F. was adjudicated a CINA in December.

The mother was advised her continuing relationship with the father negated her ability to have the children returned to her care. In December, the mother began reporting she ended her relationship with the father. The court and DHS found the mother's reports lacking in candor. By January 2019, the court, upon DHS's recommendation, directed the State to initiate termination proceedings for the purpose of determining whether the mother would finally be able to put the children over her relationship with the father. The mother's visitation progressed to semi-supervised. However, her visitation reverted to fully supervised in March when she was observed dropping the father off at work.

Following a termination hearing over two days in April, the court terminated the mother's parental rights under Iowa Code section 232.116(1)(d) and (h) (2019). As noted, the mother appeals.

## II.    Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

---

[2] A.F. was placed with her paternal aunt and uncle. R.F. and I.F. were transferred to the same placement in October. The children are thriving in their relative placement, where they have remained for the remainder of the proceedings. The relatives are committed to keeping the children and providing them with a "forever home."

III.    Analysis

First, the mother maintains the State failed to make reasonable efforts at reunification.  Upon our review of the record, we agree with the State that the mother's reasonable-efforts challenge is not preserved for our review.  It is true that "DHS is to provide 'every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child.'"  *L.T.*, 924 N.W.2d at 528 (quoting Iowa Code § 232.102(7)).  However, while DHS "has an obligation to make reasonable efforts toward reunification, . . . a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing."  *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).  The mother did not do so.  In any event, she simply argues the State "did not provide reasonable efforts toward reunification because its goal was never actually reunification."  The record belies her claim.  The mother was provided with a host of services throughout the proceedings.  Further, DHS's request for deferral of permanency for six months on behalf of the mother makes clear it was pursuing reunification.

We turn to the sufficiency of the evidence supporting the statutory grounds for termination.  As noted, the juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(d) and (h).  "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  As to termination under paragraph (h), the mother only appears to challenge the State's establishment of the final element—that the children could not be returned to her care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4)

(requiring clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

The most significant concern for returning the children to the mother is her continuing relationship with the father. On this point, the mother argues she has discontinued her relationship with the father and the children can therefore be returned to her care. We, like the juvenile court, are unpersuaded that the mother has gained the ability to extricate the father from her and the children's lives.

The DHS caseworker generally testified to her belief that the mother continued her relationship with the father. While, the Family Safety, Risk, and Permanency (FSRP) services provider testified to her belief that the parents are no longer in a romantic relationship, she agreed the parents' codependent relationship continued and served as a barrier to placing the children with the mother. The FSRP provider also testified she was unable to trust the mother to keep the father away from the children. She also testified to her concern that the parents would resume their relationship, as they have done in the past. The mother's parent educator agreed the mother and father are no longer in a romantic relationship. However, the parent educator based this belief on the mother's reports and stated she was not confident the mother was being honest. The parent educator testified, "I do not believe the children can be returned to her care today without knowing for sure." In its termination order, the court generally found the mother's reports that she was no longer involved with the father lacking in credibility. We give deference to this assessment.

The evidence is clear that the parents continue to be involved in a codependent relationship, whether romantic or not. Given the parents' history of codependency; the apparent on-again, off-again nature of their relationship; the father's lack of engagement in services; and his alcohol and anger issues, the mother's continued association with the father presents a risk of adjudicatory harm to the children if returned to the mother's care. A child cannot be returned to a parent's care if the child would remain in need of assistance or would be at risk of adjudicatory harm. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We find the evidence sufficient to conclude the children could not be returned to the mother's care at the time of the termination hearing.

## IV. Conclusion

We conclude the mother failed to preserve error on her reasonable-efforts challenge and the State met its burden for termination. We affirm the termination of the mother's parental rights.

**AFFIRMED.**