# IN THE COURT OF APPEALS OF IOWA

No. 19-1117
Filed September 25, 2019

**IN THE INTEREST OF A.S., K.B., and A.B.,**
**Minor Children,**

**B.B., Father of K.B. and A.B.,**
    Appellant,

**A.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

Parents separately appeal the termination of their parental rights to their respective children. **AFFIRMED ON BOTH APPEALS.**

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Robin L. O'Brien Licht, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**SCOTT, Senior Judge.**

Parents separately appeal the termination of their parental rights to their respective children. Both parents challenge the sufficiency of the evidence supporting the statutory ground for termination cited by the juvenile court and argue termination is not in their children's best interests due to the closeness of the parent-child bonds.

I.      **Background Facts and Proceedings**

The children in interest were respectively born in 2014, 2015, and 2016. The mother is the biological parent of all three children, while the father is the biological parent of the two younger children.[1] Both parents have a history of criminal activity and involvement with the Iowa Department of Human Services (DHS).[2] The family again came to the attention of DHS in July 2017 upon concerns for the condition of the home, the parents' use of methamphetamine, and the presence of drug paraphernalia in the home. Both parents admitted having a history of methamphetamine use but denied current use. The parents initially declined drug testing, but the oldest child tested positive for methamphetamine.[3] The mother subsequently agreed to drug testing; she likewise tested positive for the substance. The children were removed from the parents' care in August. A few days later, the court formally confirmed removal and adjudicated the children to be in need of assistance upon the stipulation of the parties. The parties

---

[1] The parental rights of the oldest child's father were also terminated. He had limited involvement in the proceedings and did not participate in services. He does not appeal.

[2] DHS was involved with both parents as juveniles. The father has had his parental rights terminated as to another of his children. Multiple assessments have been completed as to both parents relative to supervision issues and the condition of the home. Both parents have multiple criminal convictions.

[3] The younger two children's hair was too short to be tested.

stipulated to continued removal at the time of disposition in September. Both parents tested positive for methamphetamine in September, October, and November. The father tested positive for marijuana in October and December.

A social history report was completed, which disclosed the parents were not meeting the children's medical, dietary, developmental, or disciplinary needs. The parents participated in services and made progress. By February 2018, they progressed from fully to semi-supervised visits in the community. In March, the parents gave birth to another child.[4] By April, the parents progressed to semi-supervised visits in the home. In May, unsupervised visitation was authorized and initiated. Unsupervised overnight visitations began in July, but they were short-lived due to concerns for the condition of the home and the parents' ability to supervise the children. Overnight visits were reinitiated in August but, again, those visits only lasted a matter of weeks as a result of similar concerns. In October, the State moved for a trial home placement. Upon the guardian ad litem's resistance, the State modified its request to extended overnight visitation. The same was authorized by the court but not initiated due to the parents missing a number of drug tests. In November, the State withdrew its request for a trial home placement and the court granted the parents an additional three months to work toward reunification. In its permanency-review order, the court granted DHS discretion to begin extended overnight visits, which began on November 21. These visits were also short-lived, however, as a result of concerns regarding lack of supervision and

_____

[4] The youngest child is not the subject of this appeal. The child was removed from the parents' care and adjudicated a child in need of assistance shortly after birth. The child was returned to the parents' care under DHS supervision in July 2018. The child was again removed from the parents' care in February 2019.

unexplained injuries to one of the children. Visits reverted to semi-supervised. Shortly thereafter, the same child was again injured during a semi-supervised visit; visitations returned to fully supervised until April 2019, when visitation returned to semi-supervised.

In February, the State initiated termination proceedings. Shortly thereafter, the mother tested positive for methamphetamine.[5] Concerns for the parents' ability to supervise and care for the children and the condition of the family home continued through the time of the termination hearing in May. Visits continued to be semi-supervised. Following a two-day termination hearing, the juvenile court terminated both parents' parental rights under Iowa Code section 232.116(1)(f) (2019). As noted, both parents appeal.

## II.     Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Analysis

Both parents challenge the sufficiency of the evidence supporting the statutory ground for termination cited by the juvenile court. As noted, the juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(f). The parents only challenge the State's establishment of the final element of that

---

[5] The mother testified to her belief that the result was a false positive.

provision—that the children could not be returned to their care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

Children cannot be returned to their parents' care if they would remain in need of assistance or would be at risk of adjudicatory harm. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). A de novo review of the record discloses that returning children to the parents' care at the present would expose the children to a risk of adjudicatory harm. While we commend the parents for their receptiveness to and engagement in services, the parents' inability to exercise a reasonable degree of care over the children while in their care has been an ongoing concern, and we find the evidence clear and convincing that a return to the parents would place the children in an imminent likelihood of suffering harmful effects as a result of the parents' failure to provide such care. *See* Iowa Code § 232.6(c)(2). While the parents are minimally capable of supervising and parenting the children during fully-supervised visits, lessening the level of supervision or extending the duration of visits has time and time again resulted in regression, despite the parents' extensive participation in a host of services. We conclude the State met its burden for termination under Iowa Code section 232.116(1)(f).

Next, both parents argue termination is not in the children's best interests, *see id.* § 232.116(2), due to the closeness of the parent-child bonds. *See id.*

§ 232.116(3)(c). We choose to separately address the often-conflated best-interests and statutory-exception arguments. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (discussing three-step termination framework); *In re A.R.*, ___ N.W.2d ___, ___, 2019 WL 3642825, at *2 (Iowa Ct. App. 2019) (same).

In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The children have been out of the parents' care in the neighborhood of two years. The parents' various bouts of progress followed by regression have no doubt caused the children emotional and mental trauma and resulted in various behavioral issues. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *P.L.*, 778 N.W.2d at 39). We conclude these parents have been given enough time to get their affairs in order and these children's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))).

Finally, both parents' argue the statutory exception to termination contained in Iowa Code section 232.116(3)(c) should be applied to avert termination. The exception allows the juvenile court to decline to terminate parental rights when

"[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code section 232.116(3)(c). The application of the statutory exception to termination is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). We fully acknowledge the children are bonded to their respective parents and severing the familial relationship will be a difficult transition for the children. However, we agree with the juvenile court that these children need a permanent and stable home now, which cannot be provided by the parents at the present time or in the foreseeable future.

> There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child[ren] will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.
>
> The law nevertheless demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills. In view of this required patience, certain steps are prescribed when termination of the parent-child relationship is undertaken under Iowa Code chapter 232. But, beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.

*In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We conclude applying the exception to avoid termination would be contrary to the children's best interests.

## IV. Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**